## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**CEDAR SQUARE LLC,**

      **Plaintiff,**

      v.                                                      Case No. 16-CV-1076

**TCF NATIONAL BANK**

      **Defendant.**

### DECISION AND ORDER ON DEFENDANT'S
### MOTION TO DISMISS AMENDED COMPLAINT

Cedar Square LLC filed an amended complaint against TCF National Bank alleging liability from TCF's refusal to grant a loan to Cedar Square for the development of a construction project. Currently before me is TCF's motion to dismiss Cedar Square's amended complaint under Fed. Civ. R. 12(b)(6). For the reasons explained below, TCF's motion to dismiss is granted in part and denied in part.

### BACKGROUND

The dispute between the parties stems from two loans and discussions about a third loan. On June 11, 2014, TCF provided Cedar Square with a business loan in the amount of $7,280,000 (the "Existing Loan"). (Am. Compl. ¶ 3, Docket # 29.) On December 21, 2015, TCF and Cedar Square executed a second loan (""Pre-Construction Loan") in the amount of $650,000, of which $250,000 of the loan was "expressly set aside to be used for pre-construction costs for [a new construction project.]" (Am. Compl. ¶ 12.)

In October 2015, Cedar Square began discussing with TCF's Vice President, Alan Clementi, about obtaining a third loan ("New Development Loan") for a construction

project (the "Project"). (Am. Compl. ¶¶ 6-7.) From October 2015 until February 2016, Clementi was in discussion with TCF representatives about the financing structure of the proposed Project. (Am. Compl. ¶ 18.) However, on February 23, 2016, Clementi informed Cedar Square that he was leaving TCF. (Am. Compl. ¶ 30.) On February 26, 2016, representatives of TCF informed Cedar Square that it would not grant the New Development Loan. (Am. Compl. ¶ 36.)

Additionally, TCF denied Cedar Square's request to refinance the Existing Loan. (Am. Compl. ¶¶ 38-39.) Cedar Square obtained alternative financing, but incurred $200,000 in costs. (Am. Compl. ¶ 43.) Also, Cedar Square secured financing to satisfy the $7,000,000 Existing Loan and also paid off the $650,000 Pre-Construction Loan. (Am. Compl. ¶ 44.)

Cedar Square filed suit in Milwaukee County Circuit Court. (Docket # 1-1.) On August 12, 2016, Cedar Square's lawsuit was removed to federal court. On June 28, 2017, I granted TCF's motion to dismiss for failure to state a claim, (Docket # 21), and allowed Cedar Square to file an amended complaint, (Docket # 28).

On January 3, 2018, Cedar Square filed an amended complaint alleging damages based on promissory estoppel, negligent misrepresentation, tortious interference with a contract, intentional misrepresentation, a violation of Wis. Stat. § 224.80, theft by conversion, and unjust enrichment.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must satisfy Rule 8(a) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief. . . in order to give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley*

*vs. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the allegations must suggest that the plaintiff is entitled to relief beyond the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). The Court must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). However, a party may "plead itself out of court" by alleging facts that establish an "impenetrable defense" to its claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (internal citation omitted).

**ANALYSIS**

Again, Cedar Square filed an amended complaint alleging damages based on promissory estoppel, negligent misrepresentation, tortious interference with a contract, intentional misrepresentation, a violation of Wis. Stat. § 224.80, theft by conversion, and unjust enrichment. TCF argues that Cedar Square's amended complaint fails for several reasons. First, TCF argues that all of Cedar Square's claims, except the claim for intentional misrepresentation, are barred by Wisconsin's statute of frauds. Second, TCF argues that Cedar Square's intentional representation claim should be dismissed because Cedar Square has not pleaded with sufficient particularity, has not demonstrated a present intent not to perform, and fails to show reasonable reliance. TCF also argues that Cedar Square's unjust enrichment claims fails as a matter of law. I will address each issue in turn.

1. *Wisconsin Statute of Frauds*

Wisconsin's statute of frauds, WIS. STAT. § 241.02, as amended on December 17, 2015, provides in relevant part that:

> (1) In the following case every agreement shall be void unless such agreement. . . be in writing and subscribed by the party charged therewith: § 241.02(1)
>
> (b) No action may be brought against a financial institution or its affiliate on or in connection with any of the following offer, promises, agreements, or commitments of the financial institution. . . unless the offer, promise, agreement, or commitment is in writing, sets forth relevant terms and conditions, and is signed. . . by the financial institution. . . and is delivered to the party seeking to enforce the offer. . . § 241.02(3)(b)
>
> (1) An offer, promise, agreement, or commitment to lend money, grant or extend credit, or make other financial accommodation. §241.02(3)(b)(1)
>
> (c) An offer, promise, agreement, or commitment by a financial institution. . . may not be enforced under the doctrine of promissory estoppel. § 241.02(3)(c)

In other words, Wisconsin's statute of frauds prohibits bringing an action against a financial institution to enforce an offer, promise, agreement, or commitment if that offer or promise was not in writing. However, the statute makes an exception for "fraudulent misrepresentation under common law." Wis. Stat. § 241.02(2)(f).

In this case, TCF argues that except for the claim of intentional misrepresentation (also referred to as fraudulent misrepresentation), all of Cedar Square's claims are barred because § 241.02. prohibits the enforcement of an agreement or commitment that is not in writing. (Def.'s Br. in support of Motion to Dismiss ("Def.'s Br.") at 6, Docket # 33.) In response, Cedar Square argues that the Pre-Construction Loan satisfies the statute of frauds because it "was a written commitment of the future construction loan." (Pl.'s Br. in Opp. to Motion to Dismiss ("Pl.'s Resp.") at 4, Docket # 35.) Specifically, Cedar Square contends that because the Pre-Construction Loan mentions that some of the costs relate to plans for the Project, its claims are not barred by § 241.02. Cedar Square points to language of the Pre-Construction Loan, which it has attached to its amended complaint.

> Advances: Proceeds of this Note shall be advanced on or before December 21, 2015 solely for the following purposes: (i) reimbursement of the costs, which include but are not limited to the costs for design, planning, engineering, architect, permits, reports, and market studies, zoning and legal fees, relating to a *proposed student housing project*. . . .

(Ex. B., Am. Compl. at 2, Docket # 29-2) (emphasis added).

Cedar Square's arguments fail. First, Wis. Stat. § 241.02(3)(b) specifically states that to bring an action enforcing a commitment against a financial institution, the commitment must be a writing that "sets forth relevant terms and conditions." § 241.02(3)(b). The Pre-Construction Loan contains no terms that would establish a commitment from TCF to grant a future loan to Cedar Square. There is no loan dollar amount, no interest rate, no time period for repayment, or any other basic term that would constitute "relevant terms and conditions."

Second, the Pre-Construction Loan itself undermines Cedar Square's argument. As TCF points out, the Pre-Construction Loan states explicitly that the agreement does not go beyond the scope of the Pre-Construction Loan:

> Entire Agreement: THIS NOTE IS INTENDED BY LENDER AND MAKER AS A FINAL EXPRESSION OF THIS NOTE AND AS A COMPLETE AND EXCLUSIVE STATEMENT OF ITS TERMS, THERE BEING NO CONDITIONS TO THE ENFORCEABILITY OF THIS NOTE, AND THIS NOTE MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES TO THIS NOTE. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES TO THIS NOTE. THIS NOTE MAY NOT BE SUPPLEMENTED OR MODIFIED EXCEPT IN WRITING SIGNED BY LENDER AND MAKER.

(Docket # 29-2 at 2) (capitalization in original). Because the Pre-Construction Loan, which Cedar Square attached to its amended complaint, does not provide evidence of any agreement beyond the Pre-Construction Loan itself, Cedar Square has not established that its claims against TCF satisfy the statute of frauds. Consequently, all of Cedar Square's

5

claims that relate to the New Development Loan, save for the claim of intentional misrepresentation, are barred by § 241.02. As such, TCF's motion to dismiss Cedar Square's claims for promissory estoppel, negligent misrepresentation, and tortious interference with a contract is granted.

  *2. Intentional Misrepresentation*

  TCF argues that Cedar Square's intentional misrepresentation claim should be dismissed because the amended complaint fails to adequately plead a present intent not to perform, does not plead with sufficient particularity, and does not show a reasonable reliance.

  I will begin with the issue of whether Cedar Square has pleaded a present intent not to perform. To make a claim for intentional misrepresentation, one must plead that the defendant (1) made a representation of a material fact; (2) the representation was untrue; and (3) the plaintiff relied on the representation to its detriment. *Schurmann v. Neau*, 2001 WI App. ¶ 10, 240 Wis. 2d 719, 727, 624 N.W. 2d 157, 161. A claim for misrepresentation cannot be based on future events or unfulfilled promises. *Blanchar v. Lake Land Builders, Inc.*, 2007 WI App 130 ¶ 6, 301 Wis. 2d 750, 731 N.W. 2d 384. An exception to this rule is when a plaintiff claims that the defendant had a "present intent not to perform." *Schurmann*, 2001 WI App 4 ¶ 10. Put differently, a claim of intentional misrepresentation based on an unfulfilled promise must plead that, at the time the promise was made, the promisor had a present intention not to perform. *Kane v. Berken*, 229 Wis. 2d 735, 600 N.W. 2d 55, 1999 WL 557747 *4 (Wis. Ct. App. July 30, 1999).

  In this case, the amended complaint states that TCF allowed Clementi to negotiate with a promise to grant the 8.5 million dollar New Development Loan "knowing it would

6

not follow through and grant the loan to Cedar Square." Elsewhere, the amended complaint states that "[a]t the time TCF made these representations, it knew that it would not provide the [N]ew Development Loan to Cedar Square." (Am. Compl. ¶ 82.)

However, there are several allegations in the amended complaint that undermine Cedar Square's intentional misrepresentation claim based on a present intent not to perform. *See Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993) (Stating that despite drawing all reasonable inferences in favor of the plaintiff "[courts] are not required, however, to ignore facts alleged in the complaint that undermine the plaintiff's claim). First, the amended complaint alleges that, in refusing to grant the New Development Loan, "TCF was not acting in good faith and going back on its intention to provide additional financing to its customer Cedar Square." (Am. Compl. ¶ 37.) Going on back on one's intention is inconsistent with having a present intent not to perform at the time a party makes a promise.

Second, the amended complaint alleges that "TCF's *decision to not follow through with its intent* to finance the [Project] jeopardized Cedar Square's ability to provide leases to potential renters. . . . ." (Am. Compl. at 2) (emphasis added). This statement itself alleges that TCF intended to perform, but then decided to change course. This is squarely contrary to an allegation that TCF did not intend to perform at the time that it made the promises.

Third, the amended complaint alleges that after Clementi left TCF, his successor, Mike Roidt, did not follow through with the representations Clementi made regarding the New Development Loan. (Am. Compl. ¶ 36.) Thus, the amended complaint relates TCF's refusal to grant the New Development Loan with Alan Clementi leaving, not to a present intent not to perform. (Am. Compl. ¶¶ 30; 36.)

Even construing the complaint in the light most favorable to Cedar Square and accepting all facts as true, as I must at the pleading stage, the amended complaint undermines Cedar Square's claim for intentional misrepresentation. According to the allegations, TCF was communicating that it would grant the New Development Loan and then had a change of heart. Whether this refusal to grant the loan was based on Clementi leaving or other information it discovered about Cedar Square, the amended complaint "alleges several facts that defeat recovery." *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("The consistency proviso is why some complaints may be dismissed pronto: litigants may plead themselves out of court by alleging facts that defeat recovery") (internal citation omitted). Because Cedar Square's claim that TCF had a present intent not to perform is undermined by several facts in the amended complaint, its allegation based on intentional misrepresentation fails to state a claim upon which relief can be granted. Accordingly, TCF's motion to dismiss Cedar Square's intentional misrepresentation claim is granted.

Because I find that Cedar Square's intentional misrepresentation claim fails for lack of present intent not to perform, I need not address TCF's particularity and reasonable reliance arguments.

3. *Theft by Conversion*

Cedar Square alleges TCF committed theft by conversion when it "deducted from the principal," funds held in escrow that were meant to be applied to real estate taxes. (Am. Compl. ¶ 96.) TCF argues that these claims are barred by Wisconsin's statute of frauds. (Def.'s Reply Br. at 2, Docket # 36) ("[T]he statute of frauds bars all the claims except for intentional misrepresentation."). TCF's interpretation of the § 241.02 is too broad. Wis. Stat. § 241.02 does not prohibit *all claims* against financial institutions. Rather, the statute

bars all claims against financial institutions in connection with an offer for a loan unless the institution's "offer, promise, agreement, or commitment is in writing." Wis. Stat. § 241.02.

Here, Cedar Square's theft by conversion claim is not directly related to TCF's failure to grant the New Development Loan, the claim which, as discussed above, is barred by Wisconsin's statute of frauds. Instead, the theft by conversion claim relates to funds from the Existing Loan that were allegedly "illegally converted from escrow to be used exclusively for payment of real estate taxes by applying them to a prepayment fee." (Am. Compl. ¶ 97.) Accordingly, I find that Cedar Square's theft by conversion claim is not barred by Wisconsin's statute of frauds. As such, TCF's motion to dismiss Cedar Square's theft by conversion claim is denied.

  4. *Unjust Enrichment*

Cedar Square makes an unjust enrichment claim stemming from the pre-payment fees it incurred from paying the Pre-Construction Loan and the Existing Loan off early. (Am. Compl. ¶¶ 100-102.) TCF argues that this claim is also barred by the Statute of Frauds. Alternatively, TCF argues that an unjust enrichment claim is available only in the absence of an agreement.

I disagree that the statute of frauds bars the claim for unjust enrichment. This claim does not concern the New Development Loan. However, Cedar Square's unjust enrichment claim fails as a matter of law. In Wisconsin, a plaintiff may seek equitable remedies only in the absence of the an enforceable contract. *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 476 (7th Cir. 2009) (citing *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W. 2d 303, 313 (Wis. 1987)). Both the Pre-Construction Loan and Existing Loan, which Cedar Square attached to its amended complaint, contain pre-payment penalty provisions. (Docket # 29-1

9

at 3; Docket # 29-2 at 3.) "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) (internal citation omitted). Because the pre-payment penalties Cedar Square paid were governed by written agreements, unjust enrichment is not available to Cedar Square. Therefore, TCF's motion to dismiss Cedar Square's unjust enrichment claim is granted.

5.  *Violation of § 224.77*

Finally, Cedar Square alleges that TCF's intentional misrepresentation violated Wis. Stat. § 224.77, Wisconsin's mortgage banker ethical provisions. (Am. Compl. ¶¶ 90-94.) Because I find that Cedar Square failed to state a claim regarding the alleged intentional misrepresentation, Cedar Square's § 224.77 violation claim will be dismissed as well.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that TCF National Bank's motion to dismiss Cedar Square's claims based on negligent misrepresentation, promissory estoppel, tortious interference with a contract, intentional misrepresentation, violation of Wis. Stat. § 224.77, and unjust enrichment (Docket # 32) is **GRANTED**;

**IT IS FURTHER ORDERED** that TCF's motion to dismiss Cedar Square's theft by conversion claim is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court shall contact the parties to schedule a conference.

Dated at Milwaukee Wisconsin this 19th day of September, 2018.

BY THE COURT
*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge